Filed 3/17/23  P. v. Ratkevich CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>VINCENZO RATKEVICH,<br><br>     Defendant and Appellant. | D080255<br><br><br>(Super. Ct. No. SCD284858) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Vincenzo Ratkevich was convicted in a jury trial of assault with force likely to cause great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)).  The jury also found Ratkevich personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).  The court granted Ratkevich probation for three years

---

[1]    All further statutory references are to the Penal Code.

subject to various conditions including 180 days in local custody with one day custody credit.

Ratkevich filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to review the record for error as mandated by *Wende*. We offered Ratkevich the opportunity to file his own brief, but he has not responded.

STATEMENT OF FACT

Appellate counsel has provided a summary of the facts of the offense which give an adequate background for the possible issues in this appeal. We will adopt appellant's summary of the facts for convenience.

"1. PROSECUTION CASE

"In the evening of November 13, 2019, [D.] Thomas and a friend named [D.] Terrance went to Dave & Buster's to meet some coworkers.

"Thomas, an acquaintance of [Ratkevich], had dated a woman named [A.] Elliott in approximately 2018. Terrance was also acquainted with both [Ratkevich] and Elliott. Thomas was employed as a door host or bouncer at Pacer's Gentleman's Club, and had experience breaking up fights.

"Terrance received a text message from Elliott that she and [Ratkevich] were coming to the bar, and that he and Thomas should come; Terrance texted back that they were already there.[2]

"[Ratkevich] and Elliott arrived; [Ratkevich] asked Thomas to go outside. [Ratkevich], Thomas, Terrance and Elliott all went outside. Thomas

---

2  "Several weeks prior to November 13, 2019, Terrance had spoken with [Ratkevich]. [Ratkevich] told Terrance that he wanted to fight Thomas because of Elliott."

denied ever making statements of a vulgar nature regarding Elliott or trying to show [Ratkevich] photos or videos of Elliott, although he testified he was trying to show [Ratkevich] a missed call from Elliott to him on his phone.

"Thomas testified that while [Ratkevich] and Thomas were talking, [Ratkevich] put black motorcycle gloves on.[3] Thomas thought [Ratkevich]'s demeanor was 'amped up,' meaning moving around and talking fast and loud. Thomas testified that he told [Ratkevich] he did not want to fight. At trial, Thomas denied that he took up a fighting stance at any time. Terrance also testified that Thomas's hands were down. Thomas turned his head to the left, looking for Terrance. [Ratkevich] hit Thomas in the mouth, in his upper lip.

"Thomas fell backwards and his head hit a wall; he realized his front teeth had been knocked out. Terrance stepped between [Ratkevich] and Thomas, who seemed dazed; Terrance testified that [Ratkevich] was trying to get around Terrance to Thomas. [Ratkevich] left. The police arrived approximately five minutes later. Terrance drove Thomas to the emergency room. Thomas later visited a dentist who determined the teeth could not be saved.

"2. DEFENSE CASE

"[Ratkevich] had been certified as an EMT in 2013. His EMT license expired in 2017. [Ratkevich] had also attended a firefighting academy in 2017, but dropped out. [Ratkevich] later worked as a club promoter.

---

3     "Thomas testified at trial that he had his phone in his hand and was trying to show [Ratkevich] something on the phone just prior to being struck by [Ratkevich], but did not make such a statement to the police officer at the scene or at the preliminary hearing."

3

[Ratkevich] also participated in a wide variety of fitness classes, including self-defense fitness and fitness kickboxing.

"[Ratkevich] began dating . . . Elliott in 2019. In approximately mid-2019, Thomas repeatedly tried to contact Elliott when she did not want him to, including many phone calls and contacts through friends. In one particular instance, [Ratkevich] picked up Elliott's phone when Thomas called and Thomas said vulgar things about Elliott, as well as calling [Ratkevich] a 'bitch.' [Ratkevich] testified that Thomas said he had videos showing Elliott had cheated on [Ratkevich], videos or photos of a sexual nature of Elliott, and that Thomas called Elliott a 'slut.'

"[Ratkevich] and Elliott arrived at the bar and [Ratkevich] asked Thomas to go outside and talk. [Ratkevich] testified that he asked Thomas to show him the sexually explicit photos or videos of Elliott, or photos/videos showing Elliott had cheated on [Ratkevich], that Thomas had mentioned previously. Elliott and [Ratkevich] both recalled that Thomas was scrolling through his phone and was saying vulgar things about Elliott, such as 'I have videos of your girl being a whore,' or 'let me show you how much of a slut your girl is,' and tried to show [Ratkevich] his phone.

"A witness, [O.] Amador, testified that [Ratkevich] put on gloves that looked like batting gloves. [Ratkevich] testified that he put on a rubber glove because he was worried about germs.

"Elliott testified that Thomas put his hands up (two closed fists) at this moment, and that he looked 'ready to fight.' [Ratkevich] testified that Thomas put his hands up and said, 'let's fight,' and that Thomas 'flinched' at him. Witness Amador also testified that Thomas had his fists up. Elliott testified at times that Thomas tried to 'swing on' [Ratkevich], or that Thomas had his hands up and she 'assumed he was going to swing.'

4

"[Ratkevich] testified that he hit Thomas once in the mouth, but stated that it was because he thought Thomas was about to hit him. [Ratkevich] saw Thomas fall backwards and his head hit a wall. Elliott testified that Thomas was coming towards [Ratkevich] and Terrance was holding Thomas back. [Ratkevich] testified that Terrance did get between him and Thomas, but that [Ratkevich] was not trying to get closer to Thomas.

"[Ratkevich] and Elliott left separately; Elliott left with witness Amador. [Ratkevich] drove away in his truck immediately after the incident."

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review of the record and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*) counsel has identified two possible issues that were considered in evaluating the potential merits of this appeal:

1. Whether there was sufficient evidence to support the verdict.

2. Whether the sentence was authorized.

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Ratkevich on this appeal.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

6